## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

ROLANDO BANZAN LOPEZ,      )
     )
        **Movant,**      )
**v.**      )      **No. 1:21-cv-01097-STA-jay**
     )
UNITED STATES OF AMERICA,      )
     )
        **Respondent.**      )

## ORDER DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255
## ORDER ON APPELLATE ISSUES

Before the Court is Movant Rolando Banzan Lopez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 1).  Lopez, who is representing himself, is an inmate, Bureau of Prisons register number 36792-079, currently housed at the United States Penitentiary McCreary in Pine Knot, Kentucky.  The United States of America has responded in opposition to Lopez's request, and Lopez has filed a reply brief.  For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

The government initiated a prosecution against Lopez by filing a sealed criminal complaint on December 8, 2017.  The Clerk of Court docketed the criminal complaint as case number 1:17-cr-10105.  The government supported its allegations with the affidavit of Drug Enforcement Agency Task Force Officer Adam Prince.  According to TFO Prince's affidavit, Lopez and four other individuals had engaged in drug trafficking in West Tennessee in violation of the Controlled Substances Act.  Lopez was arrested on December 12, 2017, and brought before the United States

1

Magistrate Judge for an initial appearance on the charges the following day.  At the conclusion of the initial appearance, the Magistrate Judge appointed CJA panel member John Holton, Esq. to represent Lopez.

On January 3, 2018, a grand jury returned an indictment (no. 1:17-cr-10105, ECF No. 60), charging Lopez with three offenses.  Count 1 charged Lopez and others with conspiring to distribute and possess with the intent to distribute 50 grams or more of actual methamphetamine, its salts, isomers, or salts of isomers, in violation of 21 U.S.C. § 846.  Count 2 charged Lopez and others with aiding and abetting each other in the distribution or attempted distribution and the possession with the intent to distribute or attempted possession with the intent to distribute 50 grams or more of actual methamphetamine, its salts, isomers, or salts of isomers, in violation of 21 U.S.C. § 841(a)(1).  Finally, Count 3 charged Lopez with distributing or attempting to distribute and possessing with the intent to distribute or attempting to possess with the intent to distribute a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Later, on January 22, 2018, the grand jury superseded the indictment to name more co-conspirators and allege additional charges against Lopez's co-conspirators.  The superseding indictment (no. 1:17-cr-10105, ECF No. 71) charged the same counts against Lopez but altered the charge in Count 3 to allege that Lopez had distributed or attempted to distribute and possessed with the intent to distribute or attempted to possess with the intent to distribute 50 grams or more of actual methamphetamine, its salts, isomers, or salts of isomers.

After the entry of an initial scheduling order, the Court amended the case management order to set January 18, 2019, as the deadline for the parties to submit a plea agreement.  Am. Scheduling Order Sept. 28, 2018 (no. 1:17-cr-10105, ECF No. 211).  The Court set a jury trial to begin March 4, 2019.  On October 25, 2018, the Court denied Lopez's motion to suppress

2

communications intercepted through the use of six Title III wiretaps.  Sealed Order Denying Def.'s Mot. to Suppress Oct. 25, 2018 (no. 1:17-cr-10105, ECF No. 216).

On February 13, 2019, the parties notified the Court that they had reached an out-of-court agreement to resolve the charges against Lopez.  Lopez had agreed to plead guilty to the conspiracy charged in Count 1 of the Superseding Indictment in exchange for the government's agreement to dismiss the remaining counts against Lopez.  As part of the plea bargain, Lopez waived his right to appeal, unless his sentence exceeded the statutory maximum or resulted from an upward departure from the guidelines range established at sentencing.  Plea Agr. ¶ 7 (no. 1:17-cr-10105, ECF No. 244).[1]  Lopez also waived his right to bring a collateral challenge to his sentence under § 2255.  *Id.*  For its part, the United States agreed to dismiss the remaining counts and "recommend that the defendant receive a full reduction for acceptance of responsibility."  *Id.* ¶ 6.  The parties agreed to recommend to the Court that "the amount of relevant conduct for which the defendant should be held accountable is more than 50 grams of actual methamphetamine."  *Id.*  The plea agreement nevertheless acknowledged that the parties' stipulation on this point was only a recommendation and that the Court would determine "the amount of relevant conduct for which the defendant should be held accountable."  *Id.*

The Court held a hearing on February 25, 2019, to determine whether to accept Lopez's change of plea.  During the plea hearing, the undersigned conducted a Rule 11 colloquy, making certain that Lopez understood the charge to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the procedure for the sentencing phase.  Change of Plea Hr'g Tr. (no. 1:17-cr-10105, ECF No. 365).  Lopez confirmed

---

[1] The plea agreement's reference to the "guidelines" refers to the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G.").

that he was satisfied with his attorney's representation and that his attorney had thoroughly reviewed the plea agreement with him and gone over the possible sentences for Lopez's offense. Lopez represented to the Court that he had entered into the plea agreement freely and voluntarily following review of the document with his attorney and that he was in fact guilty of the crime to which he was pleading guilty. After the Assistant United States Attorney recited the factual basis for the plea and Lopez admitted the facts, the Court found that the charge against Lopez in Count 1 had a basis in fact. Having satisfied itself that Lopez understood his rights and voluntarily agreed to waive them as part of his agreement with the government, the Court accepted Lopez's guilty plea as to Count 1.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR") (no. 1:17-cr-10105, ECF No. 315).[2]  The PSR recommended a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1) because Lopez's offense involved the distribution of more than 90,000 kilograms in converted drug weight of controlled substances. *Id*. ¶ 40.  More specifically, Lopez's offense involved 133.0 kilograms of "ice" (converted drug weight of 2.660 million kg), 269.25 grams of fentanyl (converted drug weight of 673.12 kg), 44.67 grams of hydrocodone (actual) (converted drug weight of 299.29 kg), and 6.49 kilograms of marihuana (converted drug weight 6.49 kg) for a total of 2,660,978.90 kg of converted drug weight.  The PSR further recommended the addition of two points because the offense involved the importation of amphetamine or methamphetamine, two points for maintaining a premises for the purpose of distributing a controlled substance, and four points because Lopez was an organizer or leader of five or more persons in the drug trafficking conspiracy.  The PSR calculated a total adjusted

---

[2] The probation office produced a first and second addendum to the PSR after it was issued. (*See* no. 1:17-cr-10105, ECF No 315-2 & 329.) References herein to the PSR include the addenda unless otherwise specified.

offense level of 46, which the Guidelines capped at 43. *Id*. at ¶ 85.[3]  Based on an offense level of

43 and criminal history category of VI, the Guidelines range for Lopez's offense was a 10-year

minimum up to life in prison.

The Court held a sentencing hearing July 9, 2019.  Counsel for Lopez raised two objections

to the PSR's offense level calculations and the application of the Guidelines' drug house

enhancement as well as the enhancement for being a leader or organizer.  The Court heard the

parties' arguments on these points and received testimony from DEA Agent John Krieger.  Based

on the proof introduced through Agent Krieger, the Court concluded that both enhancements

should apply under the facts of Lopez's case.  After hearing additional argument from counsel and

allocution from Lopez, the Court analyzed the sentencing factors set forth in 18 U.S.C. § 3553(a).[4]

The Court sentenced Lopez to life in prison and five years of supervised release.  Judgment (no.

1:17-cr-10105, ECF No. 334) was entered the same day.  Lopez appealed the judgment to the

---

[3] In the second addendum, the Probation Officer noted that Lopez had argued for a three-level reduction for acceptance of responsibility, a reduction that would take his offense level from 46 to the Guidelines cap of 43.  The Court granted the three-level reduction at sentencing and calculated Lopez's adjusted offense level as 43.

[4] Pursuant to 18 U.S.C. § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; ... the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

United States Court of Appeals for the Sixth Circuit.   The Sixth Circuit dismissed the appeal due to the appeal waiver provision in Lopez's plea agreement.

Lopez raises six different grounds for relief as part of his § 2255 Motion.  Ground 1 alleges that Lopez's trial counsel was ineffective for failing to argue Lopez's mental competence prior to Lopez's decision to change his plea.  According to Lopez, he was taking Wellbutrin at the time and experienced side effects like delusions and an inability to concentrate.  Lopez describes his trial lawyer Mr. Holton as a "puppetmaster" who coerced Lopez as a "puppet" into changing his plea.  Lopez further alleges that Mr. Holton coerced Lopez's daughters to convince Lopez to take the plea bargain.  Lopez also argues that the Court had an independent obligation to question Lopez's competence based on his presentation in court and Lopez's medical history.

Ground 2 is that trial counsel was ineffective by failing to advise Lopez about the effect of offense conduct and enhancements and Lopez's relevant conduct on the adjusted offense level calculations.  Lopez claims that Mr. Holton never informed him the Court would determine the amount of drugs attributable to him or that the Court would make its finding under a preponderance of the evidence standard instead of proof beyond a reasonable doubt.  Lopez also faults the Court for not explaining the two burdens of proof, beyond a reasonable doubt and a preponderance of the evidence, at the plea hearing.

Ground 3 is that trial counsel failed to advise Lopez about the § 2255 waiver contained in the plea agreement.  In Lopez's view, the Court should have alerted Lopez to Mr. Holton's conflict of interest in agreeing to the waiver, which included a waiver of any claim concerning counsel's ineffectiveness.

Ground 4 is that trial counsel failed to advise Lopez that $16,290 in U.S. currency would be subject to forfeiture.  Lopez maintained throughout the proceedings that the $16,290 seized as

part of the investigation represented the proceeds of a settlement Lopez had received for injuries sustained during a previous period of incarceration. Relatedly, Ground 5 is that the United States breached the plea agreement by seizing the $16,290 in cash.

Ground 6 concerns Lopez's correct criminal history category. According to Lopez, the second addendum to his PSR stated that Lopez had a criminal history category of IV while the original PSR stated his category was VI. Lopez simply questions which statement is correct.

Lopez has submitted exhibits with his § 2255 Motion. Exhibit 1 consists of two affidavits, the first signed by Kari L. Lopez and the second by Kassandra Lopez. Both affidavits contain largely the same facts. Kari L. Lopez and Kassandra Lopez are Lopez's daughters. According to their affidavits, Mr. Holton contacted the affiants in January or February 2019 and urged them to convince their father to accept a plea agreement rather than go to trial. Mr. Holton explained to Lopez's daughters that under the terms of the plea agreement, Lopez faced a sentence of 17 to 21 years. If convicted at trial, Lopez could get a life sentence. Mr. Holton told the affiants after Lopez received a life sentence that he would appeal the sentence and that Lopez would still get the 17 to 21 years. Exhibit 2 is a copy of the position paper filed by Mr. Holton on Lopez's behalf prior to the sentencing hearing in his criminal case. Finally, Exhibit 3 is the U.S. Probation Officer's second addendum to the PSR.

The government has responded in opposition to Lopez's § 2255 Motion. As part of its Answer (ECF No. 17) to the § 2255 Motion, the government has submitted a declaration from John Holton. Mr. Holton states that throughout his representation of Lopez, Mr. Holton never had any concerns about Lopez's mental state or his understanding of the charges and proceedings against him. Mr. Holton admits that he communicated with Lopez's daughters about their father's case but denies that he ever coerced them or Lopez to accept the plea agreement. Mr. Holton

affirms that he discussed the case in some depth with Lopez and explained to him the Guidelines, the application of possible enhancements, and the concept of relevant conduct. Mr. Holton also states that he went over the plea agreement with Lopez during three different attorney-client meetings and spent several hours discussing the terms of the agreement, including the appeal waiver.

The Court also granted Lopez's request to expand the record. The specific exhibit to be included in the record was a visitor log for the West Tennessee Detention Facility (ECF No. 25-1) where Lopez was housed during his pretrial detention. Lopez argues that the visitor log establishes the number of times Mr. Holton met with Lopez at the facility to discuss his case. As part of its ruling on Lopez's request to make the log part of the record, the Court also granted the government's request to include a supplemental declaration from Mr. Holton (ECF No. 27-1). Mr. Holton's supplemental declaration states that Mr. Holton made 19 different visits to the facility to meet with Lopez about his case.

## **STANDARD OF REVIEW**

A petitioner seeking § 2255 relief "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (citation omitted). A movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020). "[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Gabrion*, 43 F.4th at 578 (citation omitted)). A movant who entered a guilty plea must show an error of constitutional magnitude

that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (2003)).

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. am. VI. The right to counsel includes "the right to the effective assistance of counsel." *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The Supreme Court has described the right to effective assistance of counsel as "a bedrock principle" and the "foundation for our adversary system" of criminal justice. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding." *Gilbert v. United States*, 64 F.4th 763, 770 (6th Cir. 2023) (quoting *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019)). A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is cognizable under § 2255. *Gilbert*, 64 F.4th at 770 (citing *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin*, 330 F.3d at 736 (6th Cir. 2003) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to carry his burden and show that he was deprived of his right to counsel, Lopez "must show deficient performance by counsel and resulting prejudice to the defendant." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). First, to demonstrate deficient performance, Lopez "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." *Id.* at 686.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

Then, to demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted).  Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Id.* (quoting *Strickland*, 466 U.S. at 687).  To satisfy the prejudice requirement in the context of a guilty plea, the defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Kimbrough v. United States*, 71 F.4th 468, 473 (6th Cir. 2023) (quoting *Hill v. Lockhart,* 474 U.S. 52, 58–59 (1985)).

Section 2255 indicates: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]" 28 U.S.C. § 2255(b); *see also* Rules Governing § 2255 Proceedings, Rule 4(b).  The Sixth Circuit has "interpreted this statutory language (and the accompanying procedural rules) to require a hearing only if a prisoner meets a standard analogous to the summary-judgment test by creating a legitimate dispute over a legally important fact." *Wallace v. United States*, 43 F.4th 595, 606–07 (6th Cir. 2022) (citations omitted*).* "[N]o hearing is required," however, "if the

petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## ANALYSIS

### I. Ground 1 – Lopez's Competence to Understand the Proceedings

The first issue raised in Lopez's § 2255 Motion is whether trial counsel was ineffective by failing to raise Lopez's mental competency prior to Lopez reaching an agreement with the government to resolve the case through plea negotiations and changing his plea to the charge in Count 1. A defendant meets the constitutional standard for competency if he has: (1) the sufficient present ability to consult with his counsel with a reasonable degree of rational understanding, and (2) a rational as well as factual understanding of the criminal proceedings against him. *Indiana v. Edwards*, 544 U.S. 164, 170 (2008); *Dusky v. United States*, 362 U.S. 402, 402 (1960). A defendant can enter a guilty plea only if the plea is made knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 241 (1969). Otherwise, "a defendant may not be put to trial . . . ." *Ryan v. Gonzales*, 133 S. Ct. 696, 703 (2013). The Sixth Circuit has noted that "the bar for incompetency" is "high." *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008). The determination of a defendant's competence is a factual finding for the Court. *United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996).

The Court holds that Lopez has not carried his burden to show that Mr. Holton was ineffective because he failed to raise Lopez's competence as a pretrial issue. Lopez has not cited any evidence that he was not competent to enter into a plea agreement with the United States. Lopez just asserts that at the time of his plea, he was receiving mental health treatment and taking

a prescribed medication. The fact that Lopez suffers from a number of physical health issues and has been diagnosed with post-traumatic stress disorder was undisputed in this case. Lopez asserts that at the time he agreed to plead guilty to the charge in Count 1, he was taking the medication Wellbutrin as part of his mental health treatment, a fact counsel mentioned at sentencing. Sentencing Tr. 58:2-3 (ECF No. 371) ("So he's taken Wellbutrin, which is an antidepressant, which he's taking for his PTSD."). Even so, a defendant is not deemed incompetent merely because he has a mental illness or takes a medication. *United States v. Dubrule*, 822 F.3d 866, 875-76 (6th Cir. 2016); *Miller*, 531 F.3d at 349 (citing *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996) ("Although there is some suggestion in the record that the defendant is currently under psychiatric care, even if she were mentally ill, it does not follow that because a person is mentally ill he is not competent to stand trial.").

Lopez's burden is to show that he lacked the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him" at the time of his change of plea in February 2019. *Miller*, 531 F.3d at 348 (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). Lopez alleges that he exhibited confusion during the plea colloquy and suggests his confusion was a side effect of the medication he was taking at the time. Lopez cites two different points during the hearing when he posed questions about terms of the plea bargain as evidence of his confused mental state. Lopez argues that his questions show that he did not have a clear understanding of the agreement and lacked the competence to understand the provisions of the agreement.

But the record of the change-of-plea hearing flatly contradicts Lopez's contention about a state of confusion or an inability to understand the nature and consequences of the plea bargain. Federal Rule of Criminal Procedure 11 governs plea bargaining and requires a district court "before

the court accepts a plea of guilty . . . [to] address the defendant personally in open court" and as part of the address or colloquy, to "inform the defendant of, and determine that the defendant understands" his trial-related rights and the consequences of waiving them by entering into a guilty plea.  Fed. R. Crim. P. 11(b)(2).  The Court also has a duty to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)" and "that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(2) & (3).

As part of the plea colloquy required by Rule 11(b), the Court asked Lopez a series of questions about his medications and questioned Lopez about his mental health.  At the end of that line of questioning, the following exchange between the Court and Lopez took place:

> THE COURT: Mr. Lopez, the reason I'm asking you all these questions is it's important for me to be sure that you understand what you're doing here today and what we call the consequences of what you're doing. Do you believe that you do understand?
>
> THE DEFENDANT: Yes, sir.

Plea Hr'g Tr. 10:4-10 (no. 1:17-cr-10105, ECF No. 365).  "Solemn declarations in open court carry a strong presumption of verity," and even though "the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable," overcoming that presumption must nevertheless require considerable support in the record. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  This typically means a defendant's response in open court and as part of a Rule 11 plea colloquy "must prevail over the assertions in [a] § 2255 motion."  *Roman v. United States*, 2021 WL 8055773, at *2 (6th Cir. 2021) (citing *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)).  Lopez's sworn response during the plea colloquy that he had a present understanding of his rights and the consequences of his guilty plea overrides his claim in his § 2255 Motion that he was confused during the hearing.

13

Mr. Holton's declaration (ECF No. 17-1) adds his own observation that "at all times Mr. Lopez was engaged and participated fully" in discussions of his case with Mr. Holton and that "[a]t no time did [Mr. Holton] ever have any concerns that [Lopez] was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Holton Decl. ¶ 7 (ECF No. 17-1). On this record, Lopez has not shown that he was not competent at the time of his plea hearing.

True, Lopez raised questions during the colloquy about two specific provisions of the plea agreement. When the Court questioned Lopez about the plea agreement's forfeiture provision, Lopez asked to be heard on that point. Lopez explained to the Court the source of a sum of currency seized during the investigation and stated his belief that the money was not subject to forfeiture. The Court discusses the forfeiture provision of the plea agreement and the disposition of Lopez's currency in more detail below. Later in the plea colloquy, as part of the discussion of the plea agreement's appeals waiver, Lopez paused and stated to the Court that he did not understand he was waiving his right to appeal. Plea Hr'g Tr. 29:1-24 (no. 1:17-cr-10105, ECF No. 365). After a short attorney-client conference, Lopez stated to the Court that although he was initially confused by the Court's question, he had in fact "waived an appeal." *Id.* at 30:4-21.

Instead of showing that Lopez was not competent to understand the proceedings, all of this underscores the fact that Lopez had the capacity to understand the forfeiture and appeal waivers contained in the plea agreement. Lopez articulated his own theory of the forfeiture issue in his colloquy with the Court and informed the Court he was already pursuing an administrative remedy to recover his property. Lopez's presentation was comprehensible and easy to follow. Lopez demonstrated an understanding of the forfeiture process and his right to request to have the property returned to him. Lopez also balked at the appeal waiver but had a clear understanding of

it after a short discussion with Mr. Holton.  The fact that Lopez raised this question at all, conferred with counsel about the appeal waiver, and then explained to the Court that he had misunderstood the Court's question about the waiver actually tends to show that Lopez was competent.  Lopez understood the significance of the appeal waiver, had the capacity to raise the question about the waiver, and then resolved the question by discussing it further with his attorney.  The Court concludes that Lopez has not carried his burden to show that he suffered from any mental disability that prevented him from consulting with Mr. Holton "with a reasonable degree of rational understanding" or that he lacked "a rational as well as factual understanding of the proceedings against him." *Miller*, 531 F.3d at 348.

The same reasoning applies to Lopez's claim that Mr. Holton acted as a "puppetmaster" and took advantage of Lopez's mental state to coerce him into accepting the plea bargain.  Lopez supposes that his incompetent mental state allowed Mr. Holton to overcome his will and pressure Lopez (directly and through his daughters) to take the plea.  In his reply brief, Lopez also asserts that Mr. Holton prepped him for the change-of-plea hearing and directed him to respond in the affirmative to all of the Court's questions.

Lopez's after-the-fact explanations contradict Lopez's statements under oath during the plea colloquy.  Rule 11(b)(2) requires a court to question a defendant "personally in open court" and satisfy itself the defendant's guilty plea "is voluntary" and not the product of "force, threats, or promises." Fed. R. Crim. P. 11(b)(2).  Lopez affirmed under oath that he had signed the plea agreement (Plea Hr'g Tr. 17:14-23), that he had gone over the agreement with Mr. Holton prior to signing it (*id.* at 17:24-18:2), and that he understood the terms of the agreement (*id.* at 18:3-6).  After the Assistant United States Attorney read the plea agreement aloud, Lopez stated that the

terms and conditions read aloud were the terms and conditions as he understood them.  *Id*. at 22:8-14.

The Court then reviewed several provisions of the plea agreement in more detail with Lopez.  At the end of this part of the colloquy, the following exchange took place:

THE COURT: Did you sign the plea agreement freely and voluntarily?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did anyone pressure you in any way –

THE DEFENDANT: No, sir. No, sir.

THE COURT: -- to try to get you to sign the agreement –

THE DEFENDANT: No, sir. I signed it on my own.

*Id*. at 31:19:32:3.  Lopez's statements that he signed the agreement of his own volition trumps the contradictory allegations of his § 2255 Motion.  Therefore, this aspect of Ground 1 is without merit.

This just leaves Lopez's related argument that the Court itself should have raised Lopez's competence *sua sponte*.  The Court holds that Lopez has not carried his burden to prove such a claim.  Under 18 U.S.C. § 4241, "the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the defendant is incompetent to stand trial." *Dubrule*, 822 F.3d at 879 (quoting *United States v. White,* 887 F.2d 705, 709 (6th Cir. 1989)). "[E]vidence of a defendant's irrational behavior, his demeanor [in court], and any prior medical opinion on competence to stand trial are all relevant" to the Court's inquiry.  *Drope*, 420 U.S. at 180; *see also Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006).  The Supreme Court has aptly summarized the nature of the Court's task:

There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult

16

> one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.  In making its fact-intensive determination, the Court's proper focus remains on the defendant's present ability to stand trial and participate in his own defense.  *United States v. Gignac*, 301 F. App'x 471, 475 (6th Cir. 2008) (citing *Dusky*, 362 U.S. at 402).

For the same reasons Lopez has not proven Mr. Holton was ineffective by failing to raise Lopez's competence, Lopez has not carried his burden to show that the Court should have questioned his competence *sua sponte*.  The undersigned presided over the entirety of the criminal proceedings against Lopez.  At no time during any appearance before the undersigned did Lopez exhibit any signs of irrational behavior or demeanor and certainly nothing of the sort to prompt the Court to question Lopez's competency.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).  With specific reference to the change-of-plea hearing, the Court conducted a full Rule 11 colloquy with Lopez to ascertain whether he was experiencing any physical or mental health impairments which could have impacted his ability to understand the consequences of his decision to accept the plea agreement.  Lopez's responses to each of the Court's questions satisfied the Court that Lopez was acting freely and intelligently.  *Id.* at 38:3-5 ("It appears to the Court that Mr. Lopez understands his rights and that he has knowingly waived those rights.").

One final point.  Based on Lopez's representations during the change-of-plea hearing, Lopez is not entitled to an evidentiary hearing on this claim about his mental competency.  Where a defendant uses a § 2255 Motion to refute statements previously made under oath and in open court, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Posey v. United States*, No.

3:20-cv-00121, 2020 WL 2129235, at *9 (M.D. Tenn. May 5, 2020) (quoting *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).  The Court concludes that Lopez has failed to carry his burden as to Ground 1.  Therefore, Lopez's § 2255 Motion is **DENIED** as to this issue.

## II. Ground 2 – Counsel's Failure to Advise Lopez Regarding Offense Conduct and the Court's Role in Determining Relevant Conduct

As his second ground for relief, Lopez claims that Mr. Holton was ineffective by failing to advise Lopez about two aspects of his potential sentence: the effect of unspecified offense conduct, or enhancements, on Lopez's adjusted offense level; and the role of the Court in determining relevant conduct at sentencing, i.e. the drug quantity attributable to Lopez.  According to Lopez, Mr. Holton never explained that the Court would decide the quantity of drugs attributed to Lopez under a preponderance of the evidence standard.  Lopez also faults the Court for failing to explain the difference between the preponderance standard and the beyond-a-reasonable-doubt standard during the plea colloquy.

"[W]hen the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process." *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018) (citing *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)).  Effective assistance includes "accurate advice regarding sentence exposure." *Id.* (citations omitted).  "A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).  Defense counsel cannot sufficiently explain sentencing exposure to a defendant without "completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time." *Id.*

The Court holds that Lopez has not shown that Mr. Holton was ineffective in advising him during plea negotiations or why any supposed deficiency in counsel's representation caused Lopez prejudice.

**A. Offense Conduct or Enhancements**

First, Lopez has not spelled out exactly what he means by "offense conduct" or "enhancements."  Lopez only argues that the fact that Mr. Holton filed a position paper objecting to the PSR's application of certain Guidelines is somehow evidence that Mr. Holton "was surprised" by the fact that those Guidelines could apply in Lopez's case.  The PSR recommended and the Court applied two different Guidelines in arriving at Lopez's sentence, both of which had the effect of increasing his offense level: a two-point increase for maintaining a premises for the purpose of distributing a controlled substance and a four-point increase because Lopez was an organizer or leader of five or more persons in the drug trafficking conspiracy.

Under U.S.S.G. § 2D1.1(b)(12), a two-level "drug house" enhancement applies when a defendant maintains a premises for the purpose of manufacturing or distributing a controlled substance.  The Guidelines' commentary explains that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises."  *United States v. Terry*, 83 F.4th 1039, 1042 (6th Cir. 2023) (citing U.S.S.G. § 2D1.1 cmt. n.17).  The Sixth Circuit has described the policy rationale of the drug house enhancement this way: "Turning a neighborhood into a recognizable drug business area by repeated sales and transactions corrupts a neighborhood in a way that warrants a steeper penalty." *Id.* at 1043.

Under U.S.S.G. § 3B1.1(a), a defendant's offense level is increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  A defendant qualifies for this enhancement if the defendant was "the organizer, leader, manager, or supervisor of one or more other participants."  U.S.S.G. § 3B1.1 cmt. n.2.  The enhancement does not apply, however, "where the defendant has 'merely exercised control over the property, assets or activities of the enterprise.'"  *United States v. Sexton*, 894 F.3d 787, 795 (6th Cir. 2018) (quoting *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004)).

Nothing in Lopez's § 2255 Motion states that Mr. Holton failed to discuss the possibility that these enhancements might apply in Lopez's case.  Lopez just argues that the PSR caught Mr. Holton by surprise.  Lopez's argument on this point contradicts his representations to the Court during the plea colloquy.  As the Court has already noted, Lopez told the Court during the colloquy that Mr. Holton had reviewed his case with him fully and completely, that Lopez was satisfied with Mr. Holton's representation, and that Mr. Holton had done a good job explaining the case to him.  Plea Hr'g Tr. 10:11-20 (no. 1:17-cr-10105, ECF No. 365).  Lopez also affirmed his understanding that a PSR would be completed.  The Court explained to Lopez that the PSR would include analysis of the Guidelines applicable to Lopez's case and that under the Guidelines there would be a range of sentences from a low end to a high end.  *Id.* at 16:10-21.

Perhaps more important, Lopez admitted during the plea colloquy that he understood he was facing a maximum sentence of life on the charge to which he was pleading guilty.[5]  The following exchange took place.

_____

[5] Lopez's argument that Mr. Holton told him he was pleading to a specific sentencing range of 17 to 21 years also runs counter to Lopez's sworn statements to the Court.  As a result, Lopez

THE COURT: All right. Now you said you understood when Mr. Kitchen went over the maximum penalty range. Am I correct?

THE DEFENDANT: As to life sentence?

THE COURT: Sir?

THE DEFENDANT: Life? Yes, sir.

THE COURT: Well, yeah. Of course, that's the maximum. And that's why I want to talk to you about. Maximum means that's the most. Okay? That's the most you could receive.

Plea Hr'g Tr. 15:9-18. Lopez himself volunteered to the Court that he understood the maximum sentence in his case was a life sentence. Lopez went on to state his understanding that the Court would make the ultimate decision of what sentence, up to and including the maximum of life, would be appropriate in his case. *Id.* at 16:19-21, 17:4-6. As part of the colloquy concerning the appeal waiver, Lopez told the Court he understood that he was waiving his right to appeal the sentence, even if he was "hoping for a certain sentence" and the Court imposed "a harder sentence." *Id.* at 30:11-14. Based on Lopez's responses during the plea colloquy, the Court concludes that Lopez cannot now contradict the record and assert that Mr. Holton failed to discuss the sentencing process and the possible sentence of life, which would have included the application of enhancements, he might receive prior to Lopez deciding to plead guilty to Count 1. *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299–300 (6th Cir. 2016) ("[E]ven if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is directly refuted on the record by the district judge during a plea colloquy.").

**B. Drug Quantity**

---

cannot base his § 2255 Motion on statements Mr. Holton allegedly made about a promised sentence of 17 to 21 years.

Lopez next alleges that counsel failed to advise him fully about the role of the Court in determining at sentencing the amount of narcotics for which Lopez would be held accountable. U.S.S.G. § 2D1.1(a) governs the base offense level for drug trafficking crimes and instructs a court at sentencing to apply "the offense level specified in the Drug Quantity Table" unless other conditions, which are not relevant here, are met.  U.S.S.G. § 2D1.1(a) (2018 ed.).  The United States has the burden to "prove the drug quantity attributable to a defendant by a preponderance of the evidence" at sentencing.  *United States v. Reed*, 72 F.4th 174, 193–94 (6th Cir. 2023) (Readler, J., concurring) (citing *United States v. McReynolds*, 964 F.3d 555, 563 (6th Cir. 2020)). A court is permitted to make "a reasonable estimate, based on physical or testimonial evidence." *Id*. at 194 (citing *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020)).  And where a defendant like Lopez is guilty of conspiracy to distribute, "the quantity may sweep in more drugs than what the defendants personally handled."  *Id*. (citing U.S.S.G. § 1B1.3 & cmt.3(B)).

Just as the record contradicts Lopez's claim that counsel did not advise him about offense conduct or enhancements, the plea colloquy also contradicts this claim.  The plea agreement stated that "any issues not specifically addressed by this plea agreement shall be resolved by the Court in accordance with applicable statutes, guidelines, rules and case law."  Plea Agr. ¶ 1 (no. 1:17-cr-10105, ECF No. 244).  The broad scope of this provision easily includes determinations about drug quantities attributable to Lopez and his co-conspirators.  The agreement went on to include a stipulation whereby the parties agreed to recommend to the Court that Lopez should be held accountable for more than 50 grams of actual methamphetamine.  The stipulation made explicit what the previous paragraph had already implied and specified that "determining the amount of relevant conduct for which the defendant should be held accountable is a matter to be determined by the district court."  *Id*. ¶ 4.  The Assistant United States Attorney read the stipulation at the plea

hearing, and Lopez confirmed his understanding that the stipulation was part of the agreement. The Court also specifically addressed this stipulation with Lopez, and Lopez stated to the Court under oath that he understood it.  Plea Hr'g Tr. 27:18-24 ("THE COURT: Paragraph 4, on page 2, the top of page 2, states that you agree that the amount of methamphetamine that you're going to be held responsible for is more than 50 grams of actual methamphetamine. Was that your understanding? THE DEFENDANT: Yes, Your Honor. Yes, sir.").

The Assistant United States Attorney also reviewed the factual basis for the charge against Lopez in Count 1 and stated that the government could prove beyond a reasonable doubt that Lopez was responsible for 48.5 kilograms of methamphetamine alone.  *Id*. at 35:20-23.  Lopez admitted the truth of the facts alleged by the government, including the quantity of drugs attributable to him. *Id*. at 36:7-37:4.  Lopez cannot now use his § 2255 Motion to contradict his prior statements that he understood these provisions of the plea agreement and admitted the truth of the facts alleged by the government as to Count 1, including the fact that Lopez was responsible for trafficking over 48 kilograms of methamphetamine.   Therefore, Lopez has not shown why Mr. Holton's representation was objectively unreasonable.

Lopez goes somewhat further and argues that Mr. Holton was ineffective because he did not directly explain to Lopez the difference between the preponderance standard and the beyond-a-reasonable-doubt burden of proof or the fact that the Court could find a drug quantity by a preponderance at sentencing.  Even if Lopez could prove these claims, Lopez cannot prove why any failure on Mr. Holton's part to advise Lopez about the drug quantity or the Court's role in determining the quantity under a preponderance standard resulted in prejudice.

At sentencing the Court adopted the PSR's conclusion that more than 90,000 kilograms in converted drug weight, based on the quantities of several different drugs involved in Lopez's

offense, was attributable to Lopez and his co-conspirators.  A drug quantity of 90,000 kilograms or more of converted drug weight meant Lopez's base offense level was 38.  *See* U.S.S.G. § 2D1.1(c)(1) Drug Quantity Table (2018 ed.).  Lopez argues that counsel's failure to explain that the Court would make this determination and under a preponderance standard prejudiced him.  But Lopez had already admitted the fact at his change-of-plea hearing that his conduct involved more than 48 kilograms of methamphetamine.

The Drug Quantity Table found in § 2D1.1(c)(1) states that the base offense level for any drug trafficking offense involving 45 kilograms or more of methamphetamine is 38.  *Id.*  In other words, the government's contention about Lopez trafficking 48.5 kilograms of meth was, standing alone, enough to establish Lopez's base offense level as 38.  And this was before the Court ever made any additional factual findings about the quantities of other drugs attributable to Lopez and the conspiracy.  Under the circumstances, Lopez cannot show that "the result of the proceeding would have been different," had Mr. Holton given him more complete counsel on the role of the Court in finding attributable conduct at sentencing under a preponderance of the evidence. *Strickland*, 466 U.S. at 694.

**C. Prejudice Arising From Taking the Plea Bargain**

Even assuming Mr. Holton failed to advise Lopez about the specific aspect of sentencing Lopez has raised as Ground 2 in his § 2255 Motion, Lopez must still show that Mr. Holton's ineffectiveness resulted in prejudice.  As part of this showing, Lopez must prove either that he would have gone to trial but for counsel's ineffectiveness or that he would have bargained for a more favorable plea.  In order to prove prejudice in the context of plea negotiations, the defendant must show "a reasonable probability that, with proper advice, the outcome of those negotiations would have been different." *Rodriguez-Penton*, 905 F.3d at 489–90.  A defendant can establish

24

prejudice by "showing he would have gone to trial but for the bad advice during the plea process" or that "had he known about the risk of adverse . . . consequences, he would have bargained for a more favorable plea." *Gilbert*, 64 F.4th at 771 (citations omitted).

Showing prejudice with proof he would have gone to trial requires a defendant to satisfy a two-part test: (1) going to trial "would have been rational" under the circumstances of his case; and (2) a reasonable likelihood based on "evidence contemporaneous with his plea" that the defendant would have elected to go to trial. *United States v. Singh*, 95 F.4th 1028, 1033 (6th Cir. 2024) (citing *Lee v. United States*, 582 U.S. 357, 370 (2017)) (other citations omitted). This showing is a "high bar" for a defendant who pleaded guilty and available only in "unusual circumstances." *Id.* at 1033–34 (quoting *Lee*, 582 U.S. at 368–69).

Showing prejudice with proof he would have bargained for a more favorable plea requires a defendant to show "based on contemporaneous evidence" the following elements: (1) a reasonable probability the defendant would have rejected the plea offer, (2) the government would have made an offer more favorable for the defendant, (3) the defendant would have accepted the more favorable offer, and (3) the trial court would have accepted the plea bargain. *Id.* at 1034 (citations omitted). This is also "difficult standard to meet" and one "rarely" successful. *Id.*

Nothing in the record shows that Lopez could satisfy the high standard and make either showing to prove his ineffective assistance claim. Lopez has not alleged or even implied that there is contemporaneous evidence that going to trial "would have been rational" or that he would have in fact gone to trial. *Singh*, 95 F.4th at 1033. Furthermore, there is no evidence the government made more than one plea offer to Lopez or would have considered an offer for a specific sentence. Fed. R. Crim. P. 11(c)(1)(C) (allowing the government and a defendant to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision

of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply"). For all of these reasons, Lopez has not met his burden to prove that any ineffectiveness on Mr. Holton's part prejudiced Lopez during the plea bargaining process. Therefore, Lopez's § 2255 Motion is **DENIED** as to this issue.

### III. Ground 3 – The Plea Agreement's § 2255 Waiver

Lopez alleges in Ground 3 that Mr. Holton did not properly advise Lopez about the § 2255 waiver and the fact that Lopez was agreeing to waive any ineffective assistance claim he might have against his attorney as part of a collateral attack on his sentence. Lopez also alleges that the Court had a duty to advise him about the waiver. In response to Lopez's § 2255 Motion, the United States has stated that it will not ask the Court to enforce the waiver in this case. A criminal defendant's agreement to waive his right to file a § 2255 motion is an affirmative defense. *Tallent v. United States*, 567 F. App'x 343, 346 (6th Cir. 2014). Unless the government seeks to enforce the waiver before a district court, the government forfeits the defense. *Id*. Here, the United States has asserted in its pleading that the government will not seek to enforce the § 2255 waiver included in Lopez's plea agreement. Because the government has agreed to forego this affirmative defense, the Court holds that Lopez has not proven how the waiver in the plea agreement has caused him any prejudice. Therefore, the § 2255 Motion is **DENIED** as to this issue.

### IV. Ground 4 and Ground 5 – Forfeiture of Lopez's $16,290 in U.S. Currency

Next, Lopez alleges in Ground 4 that Mr. Holton failed to advise him that $16,290 in U.S. currency could be subject to forfeiture as part of the plea agreement and in Ground 5 that the government improperly seized the $16,290 in cash and thereby breached the plea agreement. Just as with Lopez's other claims of ineffective assistance, Lopez must show that any failure on the part of Mr. Holton resulted in prejudice. *Strickland*, 466 U.S. at 694. As for the enforceability of

the plea agreement, "*Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), permits, but does not require, courts to vacate pleas when the government breaches its agreement." *McCormick v. United States*, 72 F.4th 130, 135 (6th Cir. 2023).

The plea agreement contained the following provision regarding forfeiture: "The defendant agrees to abandon any claim in any civil or administrative forfeiture proceeding as a result of the conduct to which the defendant is pleading under this agreement, and agrees to forfeit any and all property seized from the defendant upon arrest." Plea Agr. ¶ 3 (no. 1:17-cr-10105, ECF No. 244). During the plea colloquy, the Court addressed this provision with Lopez. At that time Lopez was involved in administrative proceedings to recover $16,290 in cash. Lopez explained to the Court that he did not agree to bargain away his right to recover the currency because the money represented the proceeds of a settlement he had received and was not connected in any way to his drug trafficking offense. The Court explained to Lopez that the Court could not tell him what the outcome of the administrative proceedings might be.

The government did, in fact, go on to seek the forfeiture of $16,290 seized as part of the investigation into Lopez's criminal activity. On September 28, 2020, the government filed a civil forfeiture complaint against $16,290 in U.S. currency, case number 1:20-cv-01219-STA-jay.[6] After Lopez filed a verified claim to the property, the United States moved to strike the claim based on the forfeiture provision of the plea agreement in Lopez's criminal case. The government argued that Lopez had agreed not to contest the forfeiture of any property traceable to his criminal activity. Although the Court granted the government's motion to strike, Lopez appealed, and the Sixth

---

[6] Lopez also filed a motion for the return of his property (no. 1:17-cr-10105, ECF No. 456) pursuant to Federal Rule of Criminal Procedure 41(g). The Court denied the request for the return of the cash based on the fact that the government had initiated civil forfeiture proceedings. Order Denying Def.'s Mot. for Return Property, Oct. 6, 2020 (ECF No. 456).

Circuit reversed and remanded.  The Court of Appeals concluded that Lopez had not knowingly and voluntarily waived his right to claim the specific property in a forfeiture proceeding.  *See United States v. $16,290.00 in United States Currency*, No. 21-6100 (6th Cir. Oct. 26, 2022).

On remand, the Court appointed counsel to represent Lopez in the forfeiture proceedings, and the United States ultimately moved to voluntarily dismiss the case without prejudice.  The Court granted the request for voluntary dismissal.  Upon entry of judgment in the civil forfeiture action, the Department of the Treasury caused a check to issue to Lopez in the amount of $18,387.34, representing his $16,290.00 plus $2,097.34 in accrued interest. The Clerk of Court received a confirmation of the transfer of the check to Lopez's trust account at the United States Penitentiary on May 16, 2024.

In light of the fact that Lopez has now received his property with accrued interest, any claim raised in his § 2255 Motion about Lopez being deprived of his property as a result of counsel's ineffectiveness or the government's alleged breach of the plea agreement no longer presents a live controversy over the funds themselves.  *Gilbert*, 64 F.4th at 769 (holding that an issue raised in a § 2255 motion may become moot if the motion "no longer presents a case or controversy within the meaning of Article III, § 2 of the Constitution").  Even if Lopez could prove that Mr. Holton did not properly advise him about the forfeiture provision in the plea agreement (Ground 4) or that the government breached the plea agreement (Ground 5), Lopez cannot show prejudice.  While it is the case that the government sought the forfeiture of the property and thereby denied Lopez the possession and use of the property during the pendency of the forfeiture case, Lopez has now received the full payment due on his property with interest.  Lopez cannot show that any alleged ineffectiveness of counsel or an alleged breach of the plea agreement has caused

28

him an injury for which he has not already received complete relief.  Therefore, Lopez's § 2255 Motion as to Ground 4 and Ground 5 is **DENIED**.

## V. Ground 6 – Error Regarding Lopez's Criminal History Category

Finally, Lopez alleges in Ground 6 that an addendum to the PSR stated that his criminal history category was IV; whereas, the PSR itself stated that his criminal history category was actually VI.  The second addendum to the PSR stated that if the Court granted a three-level reduction for acceptance of responsibility, Lopez's "Total Offense Level of 43 combined with a Criminal History Category of IV [sic] would result in a guideline imprisonment range of Life."  Second Addendum to PSR 1 (no. 1:17-cr-10105, ECF No. 329).  At sentencing the Court concluded that Lopez's criminal history put him in criminal history category VI.

The Court finds that the second addendum's statement about a criminal history category of IV was in error.  As the Court found at sentencing and for the reasons set out in the PSR itself, Lopez was correctly assigned a criminal history category of VI.  Under the Guidelines, 13 or more criminal history points puts a defendant in criminal history category VI.  U.S.S.G. ch. 5, Sentencing Table (2018 ed.).  In order to be classified in criminal history category IV, a defendant must have at least 7 but no more than 9 criminal history points.  *Id*.  The PSR assessed 13 criminal history points based on Lopez's prior convictions, and Lopez has not alleged that the PSR's assessment of his criminal history was erroneous, either at sentencing or now as part of his collateral attack on his sentence.  Lopez's criminal record puts him in criminal history category VI.  For purposes of his § 2255 Motion, Lopez has not shown why the second addendum to the PSR's error entitles him to any relief.

To the extent that Lopez alleges Mr. Holton should have objected to the criminal history category, Lopez cannot show that the second addendum to the PSR's erroneous statement about

criminal history category IV has caused him any prejudice. The Court assessed Defendant's criminal history and determined at sentencing that Defendant's criminal history category was VI, not IV. What is more, the Guidelines range for any defendant with an adjusted offense level of 43 like Lopez is life in prison, whether the defendant has a criminal history category of IV or VI. U.S.S.G. ch. 5. Therefore, Lopez's § 2255 Motion is **DENIED** as to this issue.

## VI. Appeal Issues

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). In this case, for the reasons previously stated, Lopez's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952.

Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is **DENIED**.  If Lopez files a notice of appeal, he must also pay the full $605 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (see Fed. R. App. P. 24(a)(4)-(5)).

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 19, 2024.